# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE PROTECT DEMOCRACY PROJECT, INC.
2020 Pennsylvania Ave., NW, #163
Washington, D.C. 20006,

     Plaintiff,

 v.

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, D.C. 20530,

U.S. DEPARTMENT OF DEFENSE
1400 Defense Pentagon
Washington, DC 20301, and

U.S. DEPARTMENT OF STATE
2201 C Street, NW
Washington, DC 20520,

     Defendants.

Civil Action No. 20-172

**COMPLAINT**

Plaintiff The Protect Democracy Project, Inc. ("Protect Democracy") brings this action

against Defendants U.S. Department of Justice, Department of Defense, and Department of State

to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Plaintiff

alleges as follows:

**INTRODUCTION**

1.      On January 2, 2020, President Trump approved the targeted killing of Iran's top general at Baghdad International Airport in Iraq.[1]  Acting on the President's orders, an American MQ-9 Reaper drone fired missiles into a convoy leaving the airport, killing Major General Qassim Soleimani, the leader of the elite Quds Force of the Islamic Revolutionary Guard Corps of Iran, and Iran's most important military commander.[2]

2.      Two days later, in response to Iranian government pledges to reciprocate, President Trump warned that a strike on Americans or American assets would mean that "52 Iranian sites (representing the 52 American hostages taken by Iran many years ago), some at a very high level & important to Iran & the Iranian culture, and those targets, and Iran itself, WILL BE HIT VERY FAST AND VERY HARD."[3]

3.      The U.S. Congress has not authorized the use of force against the Iranian government.

4.      The United Nations Charter, a treaty ratified by the United States, permits the use of force against another country only with permission of the United Nations Security Council or as a matter of self-defense.  There is no U.N. Security Council resolution providing legal authority for military action against the Iranian government.

5.      Section 3 of the War Powers Resolution mandates that "[t]he President in every possible instance shall consult with Congress before introducing United States Armed Forces

---

[1] Michael Crowley, *et al.*, *U.S. Strike in Iraq Kills Qassim Suleimani, Commander of Iranian Forces*, N.Y. Times (last updated Jan. 7, 2020), https://www.nytimes.com/2020/01/02/world/middleeast/qassem-soleimani-iraq-iran-attack.html.
[2] *Id.*
[3] Donald J. Trump (@realDonaldTrump), Twitter (Jan. 4, 2020, 2:52 PM), https://twitter.com/realDonaldTrump/status/1213593965838163968?s=20.

into hostilities or into a situation where imminent involvement in hostilities is clearly indicated

by the circumstances." 50 U.S.C. § 1542. Longstanding U.S. government protocol implements

this requirement through executive branch consultation with the "Gang of Eight" in Congress,

consisting of the congressional leadership of both parties and of the intelligence committees in

both chambers.

6.        The White House did not consult with the Gang of Eight or any other

congressional leaders before the Soleimani attack. The only member of Congress who appears

to have been briefed on plans for the strike is Senator Lindsey Graham, who is not in leadership

and does not sit on the Senate Intelligence Committee. He stated he learned of those plans while

golfing with President Trump at Trump's resort in Florida.[4]

7.        On January 4, 2020, 48 hours after the strike on General Soleimani, the White

House sent to Congress a notification regarding the strike as required by the War Powers Act.

The White House included only classified information in the notification, so the American

people know nothing and can know nothing of its contents, and Congress cannot engage in

public debate on the soundness of the White House rationale for the attack.[5]

8.        On January 8, 2020, administration officials briefed members of Congress

regarding the justification for the targeted killing. Officials asserted generally that intelligence

showed that Soleimani posed an imminent threat but refused to describe it in detail.[6] "What

---

[4] Libbey Cathey, *Pelosi demands briefing on US-Iran strike, Graham says he was informed beforehand*, ABC News (Jan. 3, 2020), https://abcnews.go.com/Politics/pelosi-demands-briefing-us-iran-strike-graham-trump/story?id=68049245.

[5] Maggie Haberman and Catie Edmondson, *White House Notifies Congress of Suleimani Strike Under War Powers Act*, N.Y. Times (Jan. 4, 2020), https://www.nytimes.com/2020/01/04/us/politics/white-house-war-powers-resolution.html.

[6] Peter Baker, *et al.*, *Seven Days in January: How Trump Pushed U.S. and Iran to the Brink of War*, N.Y. Times (last updated Jan. 13, 2020), https://www.nytimes.com/2020/01/11/us/politics/iran-trump.html.

really came across was a sense of disdain and contempt for the legislative branch," said Representative Gerald E. Connolly. "They didn't even pretend to be engaged in information sharing and consultation."[7] Senator Mike Lee described the briefing for Senators as "probably the worst briefing I've ever seen, at least on a military issue, in the nine years I've served in the United States Senate."[8]

9.       In the following days, the administration has provided conflicting rationales for the strike. On Friday, January 10, 2020, President Trump told Fox News's Laura Ingraham in an interview broadcast that the imminent threat had been to four U.S. embassies across the Middle East.[9] The following Sunday, Defense Secretary Mark T. Esper said on CBS's "Face the Nation" that he had never been shown evidence that Iran was planning an attack on four embassies.[10] In that same program, Representative Adam B. Schiff, Chairman of the House Permanent Select Committee on Intelligence and thus a member of the Gang of Eight, said the briefing for the Gang of Eight after the attack never mentioned that four embassies were targeted.[11] The next day, on January 13, 2020, at 4:49 a.m., NBC reported that President Trump had authorized Soleimani's killing in June 2019, seven months in advance, as long as Trump had final sign-off on any specific military operation.[12] And at 8:09 a.m., Trump stated on Twitter

---

[7] *Id.*

[8] Catie Edmondson, *Mike Lee, a G.O.P. Senator, Calls Administration's Iran Briefing 'Insulting,'* N.Y. Times (Jan. 8, 2020), https://www.nytimes.com/2020/01/08/us/politics/senator-mike-lee-iran-briefing.html.

[9] Katie Rogers, *Trump Says 4 Embassies Had Been Targeted by Iranians*, N.Y. Times (Jan. 10, 2020), https://www.nytimes.com/2020/01/10/world/middleeast/trump-iran-embassy-attacks.html.

[10] Peter Baker & Thomas Gibbons-Neff, *Esper Says He Saw No Evidence Iran Targeted 4 Embassies, as Story Shifts Again*, N.Y. Times (Jan. 12, 2020), https://www.nytimes.com/2020/01/12/us/politics/esper-iran-trump-embassies.html.

[11] *Id.*

[12] Carol E. Lee & Courtney Kube, *Trump authorized Soleimani's killing 7 months ago, with conditions*, NBC (Jan. 13, 2020), https://www.nbcnews.com/politics/national-security/trump-authorized-soleimani-s-killing-7-months-ago-conditions-n1113271.

that "it doesn't really matter" whether the targeted killing was in response to an imminent threat to the United States, effectively disavowing the need for a justification under U.S. or international law to unilaterally engage in acts of war.[13]

10.     While its policy justifications for the strike have been inconsistent, the Trump administration's legal justification for the targeted killing of a top Iranian government official has been withheld entirely from the American people.  The War Powers Resolution notification provided to Congress may have included a legal rationale, but as explained above, that notification was entirely classified.  This secrecy stands in contrast to the Department of Justice's actions in 2011 when the United States initiated the use of force against Libya.  Then, the Department of Justice's Office of Legal Counsel published a 14-page "Memorandum Opinion for the Attorney General," dated April 1, 2011, entitled "Authority To Use Military Force in Libya."[14]

11.     In the meantime, the risk remains that the conflict will escalate.  On January 7, 2020, the Iranian government launched missile strikes against two Iraqi military bases housing U.S. troops in Iraq.  While the White House initially reported no casualties from the strikes, U.S. military sources later identified at least 11 injured troops.[15]  President Trump has repeatedly threatened disproportionate retaliation in the event of a strike by Iran on U.S. interests.  Just

---

[13] Donald J. Trump, Twitter (Jan. 13, 2020), https://twitter.com/realDonaldTrump/status/1216754098382524422; Karen DeYoung, *Trump says 'it doesn't really matter' if Iranian general posed an imminent threat*, Wash. Post (Jan. 13, 2020), https://www.washingtonpost.com/national-security/trump-says-it-doesnt-really-matter-if-iranian-general-posed-an-imminent-threat/2020/01/13/c9f7ea1c-362e-11ea-9541-9107303481a4_story.html.

[14] Available at https://fas.org/irp/agency/doj/olc/libya.pdf.

[15] Jake Tapper, Ryan Browne, and Barbara Starr, *US troops were injured in Iran missile attack despite Pentagon saying initially there were no casualties*, CNN (Jan. 17, 2020), https://www.cnn.com/2020/01/16/politics/service-members-injured-iran-strike/index.html.

months ago, he pledged that an "attack by Iran on anything American will be met with great and overwhelming force.  In some areas, overwhelming will mean obliteration."[16]  During tensions between the U.S. and Iran the year before, President Trump tweeted: "NEVER, EVER THREATEN THE UNITED STATES AGAIN OR YOU WILL SUFFER CONSEQUENCES THE LIKES OF WHICH FEW THROUGHOUT HISTORY HAVE EVER SUFFERED BEFORE."[17]

12.     Several hours after the January 8, 2020 attack on U.S. troops in Iraq, Iranian missile defenses shot down a Ukrainian commercial airliner that had just taken off from Tehran, killing all 176 aboard.  The Iranian government eventually admitted it was a "mistake," after initially denying responsibility.[18]

13.     On January 14, 2020, the governments of Great Britain, France, and Germany formally accused Iran of violating a 2015 agreement that limited its nuclear program.  The Iranian government linked its decision no longer to abide by those restrictions on its uranium enrichment to the U.S. strike on Soleimani.[19]  Just months ago, in response to similar threats from Iran to resume uranium enrichment, President Trump threatened they would "come back to bite [Iran] like no one has been bitten before!"[20]

---

[16] Donald J. Trump, Twitter (Jun. 25, 2019), https://twitter.com/realDonaldTrump/status/1143529907403788288.

[17] Donald J. Trump, Twitter (Jul. 22, 2018), https://twitter.com/realdonaldtrump/status/1021234525626609666.

[18] Karen DeYoung, *Trump says 'it doesn't really matter' if Iranian general posed an imminent threat*, Wash. Post (Jan. 13, 2020), https://www.washingtonpost.com/national-security/trump-says-it-doesnt-really-matter-if-iranian-general-posed-an-imminent-threat/2020/01/13/c9f7ea1c-362e-11ea-9541-9107303481a4_story.html.

[19] Steven Erlanger, *France, Germany and U.K. Serve Notice on Iran Under Nuclear Deal*, N.Y. Times (Jan. 14, 2020), https://www.nytimes.com/2020/01/14/world/europe/iran-nuclear-deal.html.

[20] Donald J. Trump, Twitter (Jul. 3, 2019), https://twitter.com/realDonaldTrump/status/1146517318509481984.

14.     The strike on Soleimani, Iran's response, and the President's consistent threats of escalation create the very real potential for future U.S. military action involving Iran.  Thus the administration's foreign policy, military, and legal agencies have an obligation to provide to the American people straightforward and consistent legal and policy justifications for the targeted killing of Iran's top general, which military and foreign policy experts have described as "tantamount to an act of war."[21]

15.     Our Constitution divides war-making powers between Congress and the President.  This is both to avoid a situation in which it is too easy for one person to initiate a war, and to ensure that the United States goes to war only when its people support doing so.

16.     Congress has taken steps to exercise its war powers to check the President's military intervention in Iran.  On January 9, 2020, the House of Representatives passed a resolution that would require President Trump to seek congressional authorization before taking further military action against Iran.[22]  On January 14, 2020, Senator Tim Kaine announced that a corresponding measure has enough Republican support to pass the Senate.[23]  Representative Elissa Slotkin, sponsor of the House resolution, committed to introducing in the House any Senate-passed measure to curb the President's military action in Iran.[24]  Last year, an amendment to the National Defense Authorization Act that would curb U.S. military actions towards Iran

---

[21] *E.g.*, Robin Wright, *The Killing of Qassem Suleimani is Tantamount to an Act of War*, The New Yorker (Jan. 3, 2020), https://www.newyorker.com/news/our-columnists/the-us-assassinated-suleimani-the-chief-exporter-of-irans-revolution-but-at-what-price.
[22] Catie Edmondson & Charlie Savage, *House Votes to Restrain Iran War Powers*, N.Y. Times (Jan. 9, 2020), https://www.nytimes.com/2020/01/09/us/politics/trump-iran-war-powers.html.
[23] Catie Edmondson, *Senate Has Votes to Pass Limits on Trump's Iran War Power, Likely Drawing a Veto*, N.Y. Times (Jan. 14, 2020), https://www.nytimes.com/2020/01/14/us/politics/iran-war.html.
[24] Rebecca Kheel, *House war powers sponsor expects to take up Senate version of resolution*, The Hill (Jan. 15, 2020), https://thehill.com/policy/defense/478442-house-war-powers-sponsor-expects-to-take-up-senate-version.

passed the House of Representatives on a bipartisan basis; while a similar amendment failed in the Senate, four Republicans joined Democrats in supporting it.[25]

17.     In order for Congress to exercise its role as a representative of the people, the people must be able to provide their representatives with their views on these pending measures regarding military action against Iran.  The public cannot do this in an informed way in the absence of information from Defendant agencies about the legal authority and policy justification for its military actions.

18.     Considering the demonstrated possibility of a sudden escalation of hostilities with Iran, it is imperative that the public be informed of the administration's assessments of its authority and its policy rationale for the Soleimani strike *immediately*, in order for the public to share their views with Congress in advance of Senate and House votes on the matter.

19.     Accordingly, on January 3, 2020, Plaintiff submitted a FOIA request to Defendants seeking records relating to the military strike, the President's legal authority to execute it, and any communications with Congress regarding the strike.

20.     For the records to serve their purpose in informing the public on these matters, there is urgency in accessing the information from Defendant agencies and making it widely available, which Plaintiff seeks to do.

## JURISDICTION AND VENUE

21.     The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

---

[25] Bryan Bender & Connor O'Brien, *Why a pro-Trump Republican is fighting to limit the President's war powers*, Politico (last updated Sept. 20, 2019), https://www.politico.com/story/2019/09/19/trump-war-iran-1748552.

22.      Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

### I.  Plaintiff

23.      Plaintiff Protect Democracy is an organization with 501(c)(3) tax-exempt status, incorporated under the laws of the District of Columbia, and located at 2020 Pennsylvania Avenue, NW, #163, Washington, DC 20006.  Plaintiff's mission is to protect our democracy from descending into a more authoritarian form of government by preventing those in power from depriving Americans of a free, fair, and fully informed opportunity to exercise ultimate sovereignty.  As part of this mission, Plaintiff seeks to inform public understanding of operations and activities of the government by gathering and disseminating information that is likely to contribute significantly to the public understanding of executive branch operations and activities. Plaintiff regularly requests such information pursuant to FOIA.

24.      Plaintiff intends to give the public access to documents transmitted via FOIA on its website, www.protectdemocracy.org, and to provide information about and analysis of those documents as appropriate.

### II.  Defendants

25.      Defendant U.S. Department of Justice ("DOJ") is an agency of the executive branch of the federal government of the United States.  DOJ is headquartered at 950 Pennsylvania Avenue, NW, Washington, DC 20530.  DOJ has possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA request.

26.      Defendant U.S. Department of Defense ("DOD") is an agency of the executive branch of the federal government of the United States.  DOD is headquartered at 1400 Defense

Pentagon, Washington, DC 20301.  DOD has possession, custody, and control of the documents

that Plaintiff seeks in response to its FOIA request.

27.     Defendant U.S. Department of State (the "State Department") is an agency of the

federal government of the United States headquartered at 2201 C Street, NW, Washington, DC

20520.  The State Department has possession, custody, and control of the documents that

Plaintiff seeks in response to its FOIA request.

## FACTUAL ALLEGATIONS

### I.  Plaintiff's FOIA Requests

28.     On January 3, 2020, Plaintiff sent FOIA requests to Defendant DOJ's components

Office of Legal Counsel (OLC), Office of Information Policy (OIP), and National Security

Division (NSD), as well as Defendants DOD and State Department, seeking the following

records:

> a.  Any and all records, including but not limited to emails and memoranda, reflecting, discussing, or otherwise relating to the January 2, 2020 military strike in Iraq and/or the President's legal authority to launch such a strike.
>
> b.  Any and all records, including but not limited to emails and memoranda, reflecting or related to communications with Congress, congressional committees, or individual members of Congress regarding the January 2, 2020 military strike in Iraq, including but not limited to records that reflect consideration of whether or not to inform Congress, congressional committees, or individual members of Congress of the strike, and/or the existence or absence of any obligation to inform Congress, congressional committees, or individual members of Congress of the strike.

The timeframe for these requests is December 1, 2019 through the present.

True and correct copies of Plaintiff's FOIA requests are attached as Exhibits A (OLC), B (OIP),

C (NSD), D (DOD), and E (State Department).

29.     In each request, Plaintiff requested expedited processing pursuant to 5 U.S.C. §

552(a)(6)(E) and the agency's applicable regulation.  Ex. A at 2-4; Ex. B at 2-4; Ex. C at 2-4; Ex.

D at 2-3; Ex. E at 2-3.  Plaintiff's requests are narrowly tailored to allow Defendants to respond

to them in an expedited fashion.  The requests meet the standards for expedited processing under

FOIA and each Defendant's applicable regulation.

30.     There can be no question that the President's decision to initiate military action is

of the utmost importance to the public.

31.     Similarly, whether the President has the legal authority to unilaterally launch a

military strike killing a top foreign government official—or used military force without legal

authorization—is a question that is fundamental to the functioning of our democracy.  The

American people have an immediate right to understand the administration's position with

respect to the legality of the recent strike against Iran, to assess whether that position is justified,

and to exercise their right to petition their government or vote it out of office if they disagree.

32.     Plaintiff's request for material related to the President's legal authority to order

the targeted killing of Soleimani could reveal whether the President acted outside of domestic

and/or international law, as well as whether the President exceeded his authority vis-à-vis

Congress.

33.     Records showing conduct outside the bounds of executive authority would go

directly to the question of government integrity that affects public confidence.

34.     The American people also have a right to understand the policy justification for

military action against Iran that could escalate quickly, including into a hot war with a foreign

adversary that has announced intentions to develop nuclear weapons.  And they have a right and

an imperative to inform congressional debate on this issue.

35.     On January 9, 2020, the House of Representatives voted to invoke Section 5(c) of

the War Powers Resolution, with H. Con. Res. 83.[26]  On January 9, 2020, Senator Tim Kaine

introduced S.J. Res. 68.[27]  The expedited procedures under the War Powers Resolution, as

amended by Section 1013 of 50 U.S.C. §1546a, will allow for Senate votes on that resolution as

early as this week, and a House vote on that measure will follow shortly.

36.     Congress is exercising its authorities under the War Powers Resolution, but as

explained above, it appears Congress is doing so without complete information from

Defendants—despite the fact that the Framers of the Constitution placed the power to declare

war in the hands of the most representative branch of government.  As then-Congressman

Abraham Lincoln explained, "Kings had always been involving and impoverishing their people

in wars, pretending generally, if not always, that the good of the people was the object," so the

Framers "resolved to so frame the Constitution that no one man should hold the power of

bringing this oppression upon us."[28]

37.     Plaintiff's FOIA requests also sought fee waivers pursuant to 5 U.S.C. §

552(a)(4)(A)(iii).  Ex. A at 4; Ex. B at 4; Ex. C at 4; Ex. D at 3-4; Ex. E at 3-4.

38.     Plaintiff demonstrated a compelling need for a fee waiver based on its status as a

representative of the media and because disclosure of the information "is likely to contribute

---

[26] "Iran War Powers Resolution: Roll Call Vote No. 7." Congressional Record 166:5 (Jan. 9, 2020) p. H115, https://www.congress.gov/116/crec/2020/01/09/CREC-2020-01-09-pt1-PgH92-2.pdf.
[27] S.J. Res. 68, 116th Cong. (2020), https://www.congress.gov/116/bills/sjres68/BILLS-116sjres68is.pdf.
[28] Abraham Lincoln to William H. Herndon, 15 Feb. 1848, *Collected Works of Abraham Lincoln*, vol. 1, http://quod.lib.umich.edu/l/lincoln/lincoln1/1:458.1?rgn=div2;view=fulltext (accessed Jan. 21, 2020).

significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(ii)-(iii).

39.     Plaintiff is "primarily engaged in disseminating information."  Plaintiff operates in the tradition of 501(c)(3) good government organizations that qualify under FOIA as "news media organizations."  Like those organizations, Plaintiff's purpose is to "gather[] information of potential interest to a segment of the public, use[] its editorial skills to turn the raw materials into distinct work, and distribute[] that work to an audience."  *Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

40.     Indeed, Plaintiff has routinely demonstrated the ability to disseminate information about its FOIA requests to a wide audience.[29]  Plaintiff intends to disseminate information and analysis about this request—and any information obtained in response—through its website (protectdemocracy.org); its Twitter feed (https://twitter.com/protctdemocracy), which has more than 29,000 followers; its email list of approximately 20,000 people; and sharing information with other members of the press.

---

[29] *See, e.g.*, Lisa Rein, *Watchdog group, citing "integrity of civil service," sues Trump to find out if feds are being bullied*, Wash. Post (Apr. 27, 2017), https://www.washingtonpost.com/news/powerpost/wp/2017/04/27/watchdog-group-citing-integrity-of-civil-service-sues-trump-to-find-out-if-feds-are-being-bullied/?utm_term=.8647ab128f3e; Ben Berwick, *Going to Court for Civil Servants*, Take Care (Apr. 28, 2017), https://takecareblog.com/blog/going-to-court-for-civil-servants; Charlie Savage, *Watchdog Group Sues Trump Administration, Seeking Legal Rationale Behind Syria Strike*, N.Y. Times (May 8, 2017), https://nyti.ms/2pX82OV; Justin Florence, *What's the Legal Basis for the Syria Strikes? The Administration Must Acknowledge Limits on its Power to Start a War*, Lawfare (May 8, 2017), https://www.lawfareblog.com/whats-legal-basis-syria-strikes-administration-must-acknowledge-limits-its-power-start-war; *Protect Democracy Files Lawsuit Against State Department Over Treatment of Civil Service* (March 2018), *available at* https://protectdemocracy.org/update/lawsuit-state-department-civil-service/.

## II.  DOJ Office of Legal Counsel Response

41.      On January 10, the OLC FOIA Officer wrote a letter to Plaintiff acknowledging receipt of Plaintiff's request on January 3, 2020, and assigning it a tracking number.  A true and correct copy of OLC's letter is attached as Exhibit F.

42.      OLC also granted Plaintiff's request for expedited processing, but stated that it likely would not comply with the request within the twenty-day statutory deadline for determining whether to comply with a FOIA request.

43.      To date, OLC has not complied with the request.  Nor has OLC made a determination regarding Plaintiff's request for a fee waiver.

## III.  DOJ Office of Information Policy Response

44.      On January 14, the OIP FOIA Officer wrote a letter to Plaintiff acknowledging receipt of Plaintiff's request on January 3, 2020, and assigning it a tracking number.  A true and correct copy of OIP's letter is attached as Exhibit G.

45.      OIP also granted Plaintiff's request for expedited processing, but stated that it likely would not comply with the request within the twenty-day statutory deadline for determining whether to comply with a FOIA request.

46.      To date, OIP has not complied with the request.  Nor has OIP made a determination regarding Plaintiff's request for a fee waiver.

## IV.  DOJ National Security Division Response

47.      On January 13, the NSD FOIA Office emailed a letter to Plaintiff acknowledging receipt of Plaintiff's request dated January 3, 2020, and assigning it a tracking number.  A true and correct copy of NSD's email is attached as Exhibit H.

48.      NSD denied Plaintiff's request for expedited processing.

49.     Plaintiff's request concerns "[a] matter of widespread and exceptional media

interest in which there exist possible questions about the government's integrity that affect public

confidence," 28 C.F.R. § 16.5(e)(1)(iv), and there is an urgent need "to inform the public about

an actual or alleged Federal Government activity," 28 C.F.R. § 16.5(e)(1)(ii), for the reasons

stated in Paragraphs 29-36.

50.     NSD has not made a determination regarding Plaintiff's fee waiver request.

## V.   DOD Response

51.     Defendant DOD acknowledged receipt of the request on January 3, 2020, in a

letter to Plaintiff dated January 9, 2020.  In its letter, DOD denied Plaintiff's request for

expedited processing.  A true and correct copy of DOD's letter is attached as Exhibit I.

52.     Plaintiff's request meets the criteria for expedited processing because "[t]he

information is urgently needed by an individual primarily engaged in disseminating information

in order to inform the public concerning actual or alleged government activity."  32 C.F.R.

§ 286.8(e)(1)(i)(B).

53.     The information requested is "urgently needed . . . to inform the public

concerning actual or alleged government activity" for the reasons stated in Paragraphs 29-36.

54.     Plaintiff is "primarily engaged in disseminating information" for the reasons

stated in Paragraphs 39-40.

55.     To date, DOD has not made a determination regarding Plaintiff's fee waiver

request.

## VI.   State Department Response

56.     Defendant State Department acknowledged receipt of the request on January 3,

2020, in a letter to Plaintiff dated January 6, 2020.  In its letter, the State Department denied

Plaintiff's request for expedited processing.  A true and correct copy of the State Department's

letter is attached as Exhibit J.

57.     As explained in Paragraphs 29-36 and 39-40, Plaintiff's request meets the criteria

for expedited processing because "[t]he information is urgently needed by an individual

primarily engaged in disseminating information in order to inform the public concerning actual

or alleged Federal government activity."  22 C.F.R. § 171.11(f)(2).

58.     To date, the State Department has not made a determination regarding Plaintiff's

fee waiver request.

<h2 style="text-align:center">COUNT I</h2>

<h3 style="text-align:center">(Violation of FOIA, 5 U.S.C. § 552(a)(6)(E))</h3>

59.     Defendants DOJ (through its component NSD), DOD, and the State Department

violated FOIA by failing to grant expedited processing to Plaintiff under 5 U.S.C. § 552(a)(6)(E)

and Defendants' corresponding regulations.

<h2 style="text-align:center">PRAYER FOR RELIEF</h2>

WHEREFORE, Plaintiff respectfully requests that the Court:

(1) Order Defendant DOJ's component NSD and Defendants DOD and the State

Department to grant Plaintiff's request for expedited processing;

(2) Grant Plaintiff an award of attorney fees and other reasonable litigation costs pursuant

to 5 U.S.C. § 552(a)(4)(E);

(3) Grant Plaintiff such other relief as the Court deems appropriate.

Respectfully submitted,

Dated:  January 22, 2020                        THE PROTECT DEMOCRACY PROJECT, INC.

By: */s/  Anne H. Tindall*

Anne H. Tindall
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave., NW, #163
Washington, DC 20006
T: (202) 579-4582 | F: (929) 777-8428
anne.tindall@protectdemocracy.org

Benjamin L. Berwick
The Protect Democracy Project, Inc.
15 Main Street, Suite 312
Watertown, MA 02472
T: (202) 579-4582 | F: (929) 777-8428
ben.berwick@protectdemocracy.org

John Paredes*
The Protect Democracy Project, Inc.
115 Broadway, 5th Floor
New York, NY 10006
T: (202) 579-4582 | F: (929) 777-8428
john.paredes@protectdemocracy.org

*Counsel for Plaintiff*

*Motion for admission *pro hac vice* forthcoming.