# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE PROTECT DEMOCRACY
PROJECT, INC.,

           *Plaintiff,*

    v.                              Case No. 20-cv-0172 (RC)

U.S. DEPARTMENT OF JUSTICE, *et al.*,

           *Defendants.*

## DECLARATION OF PAUL P. COLBORN

I, Paul P. Colborn, declare as follows:

1.      I am a Special Counsel in the Office of Legal Counsel ("OLC") of the United States Department of Justice (the "Department") and a career member of the Senior Executive Service. I joined OLC in 1986, and since 1987 I have had the responsibility, among other things, of supervising OLC's responses to requests it receives under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. I submit this declaration in support of the Government's opposition to Plaintiff's Motion for a Preliminary Injunction. The statements that follow are based on my personal knowledge, as well as on information provided to me by OLC staff working under my direction.

2.      The purpose of this declaration is to respond to Plaintiff's request for a preliminary injunction to require Defendants to "produce" the following:

- Within 24 hours of the issuance of this Court's Order, non-exempt portions of (1) any OLC memoranda addressing the legality of the Soleimani strike and/or any obligation to consult with Congress regarding that strike; (2) any correspondence or memoranda addressing the legality of the strike drafted by officials serving any one of the Defendants and shared with the National Security Council; and (3) any "record of discussions" or "summary of conclusions" related to a meeting or meeting(s) involving lawyers

for any of the Defendants and pertaining to the Soleimani strike; or
confirmation that no such records exist; and

- By March 18, 2020, or by another date certain to be determined by
the Court, all non-exempt requested records (or acknowledgement
if no such records exist).

ECF No. 14-1, at 2.

3.      This declaration explains the basis for OLC's conclusion that a court order in this

matter requiring OLC to meet Plaintiff's proposed deadline would be burdensome,

impracticable, and not feasible to adhere to without compromising OLC's ability to meet existing

deadlines in other FOIA cases and directly disadvantaging other FOIA requesters, as well as

compromising OLC's ability to perform its duties as legal adviser to the President and the

Executive Branch.  For the reasons set forth below, OLC simply does not currently maintain the

resources to further expedite processing of Plaintiffs' FOIA request without adversely impacting

these other obligations, including other FOIA requests that have been granted expedited

processing or are in litigation.

### OLC'S LEGAL ADVICE ROLE AND ITS PROCESSING OF FOIA REQUESTS

4.      The principal function of OLC is to assist the Attorney General in his role as legal

adviser to the President of the United States and to the departments and agencies of the

Executive Branch.  OLC provides advice and prepares opinions addressing a wide range of legal

questions involving the operations of the Executive Branch.

5.      OLC is a very small component of the Department of Justice, employing

approximately 18 to 25 attorneys at any one time, although staffing levels have varied as a result

of vacancies and fiscal circumstances.  The Office currently has 13 line attorneys (Attorney-

Advisers), as well as three more senior attorneys with the title of Senior Counsel or Special

Counsel, four Deputy Assistant Attorneys General and an Assistant Attorney General. OLC also

employs one attorney at the line attorney level having the title FOIA and Records Management

Attorney (the "FOIA Attorney").  OLC also employs four paralegals, with one having the title of

Supervisory Paralegal and one having the title of Lead Paralegal.

6.     With the exception of the FOIA Attorney, the primary responsibility of the Office's attorneys, including its Attorney-Advisers, is to assist in the preparation of the Office's legal advice to the President, the Attorney General, and the agencies and departments of the Executive Branch.  The work of processing and responding to FOIA requests directed or referred to OLC, as well as the work of coordinating OLC's FOIA litigation matters with the Department's litigating components, is carried out by OLC's FOIA Attorney, a single employee who works under my supervision and with the assistance of OLC's paralegals.  The paralegals likewise have a number of other important duties, including research and cite-checking assistance in connection with the Office's legal advice; processing the Department's interactions with the Federal Register; maintaining records relating to Attorney General orders and Department regulations; and assisting with litigation in connection with which the Office is playing a role, including FOIA litigation.

7.     Over the five-year period covering Fiscal Years 2012 to 2016, OLC received an average of approximately 106 requests per fiscal year.  Despite the limited resources available to OLC for processing FOIA requests, over that time period OLC processed the substantial majority of requests received, reduced a significant outstanding FOIA processing backlog, and maintained a relatively small backlog.  In Fiscal Year 2012 (October 1, 2011 – September 30, 2012), OLC received 130 FOIA requests and had a year-end backlog of 23 requests.  In FY2013, OLC received 86 FOIA requests and had a year-end backlog of 34 requests.  In FY2014, OLC received 91 FOIA requests and had a year-end backlog of 35 requests.  In FY2015, OLC received 111 FOIA requests and had a year-end backlog of 49 requests.  In FY2016, OLC received 111 FOIA requests and had a year-end backlog of 60 requests.  In total over the course of those five years, OLC received 529 FOIA requests and processed 503 FOIA requests.

8.     In contrast, in FY2017 (October 1, 2016 – September 30, 2017), OLC received 284 FOIA requests.  This represented more than two and a half times the average number of requests received per year over the previous five years, imposing a considerable additional burden on OLC's ability to meet its FOIA obligations.  This increased burden has continued

during the following fiscal years.  In the FY2018 (October 1, 2017 – September 30, 2018), OLC

received 209 new FOIA requests, and in FY2019 (October 1, 2018 – September 30, 2019), OLC

received 219 FOIA requests.

## EXPEDITED PROCESSING

9.     In processing FOIA requests, OLC acts pursuant to the Department's FOIA

regulations, which state that "[c]omponents ordinarily will respond to requests according to their

order of receipt."  28 C.F.R. § 16.5(a).  OLC uses multitrack processing, as permitted by 28

C.F.R. § 16.5(b), and assigns requests to the expedited, simple, or complex processing tracks.

OLC's general practice is to begin search and processing within each track according to the

requests' order of receipt.  Typically, an initial search is conducted by searching OLC's internal

database of final legal advice and/or by inquiring with OLC's attorneys to determine whether

responsive records are likely to exist.  Subsequent searching, including the identification of

custodians and development of keywords for electronic searches, is then carried out as needed

based on the results of that initial search.  These subsequent searches are prioritized by

processing track, date of receipt, and available resources.

10.     When subsequent searching of multiple custodians' emails and/or electronic files

is required, that process is initiated by submitting a data request to an eDiscovery group in the

Department's Justice Management Division ("JMD") that has access to the data.  That group

serves other Department components besides OLC and maintains its own queue of data requests.

Accordingly, OLC does not have full control over searching its users' emails.

11.     Because some requests are by their nature less complicated than others—

including because records responsive to some requests may be easier to locate and identify,

easier to process, or require less intra- or inter-agency consultation—the processing of requests

may be completed out of order, notwithstanding the order of their assignment for processing.

For example, although the expedited track is not further subdivided by complexity, the nature of

this process is such that a simple or narrowly-targeted expedited request can often be closed

fairly quickly if the initial search identifies few or no potentially responsive records.

12.     In the absence of a court order establishing deadlines that require a later-received request to be processed out of order ahead of earlier-received requests, OLC's policy is to process FOIA requests in order according to Department regulations—that is, in the order of receipt within their respective queue—even where a request is the subject of litigation. We should not unfairly favor more-litigious requesters over other members of the public who have made FOIA requests but lack the interest, resources, or expertise to engage in litigation regarding OLC's response to their FOIA request. This policy is intended to ensure that OLC's limited resources for FOIA processing are allocated and prioritized in a manner that is fair to all FOIA requesters.

13.     When OLC received Plaintiffs' FOIA request on January 3, 2020, OLC had 452 pending FOIA requests, including 72 in the expedited processing queue. These requests all remain open and pending as of the date of Plaintiff's motion.

14.     Many of these earlier-received, earlier-expedited FOIA requests are no less complicated than Plaintiffs' request and seek records on issues that are similarly high-profile. For example, FY13-056 seeks records "regarding all programs of warrantless mass or dragnet surveillance that operate by impact and effect to collect information and date on United States Persons"; FY14-042 seeks multiple categories of records "concerning the policies and procedures governing the acquisition, retention, dissemination, and use of information gathered as part of various government surveillance programs". Several open expedited requests (FY17-069, FY17-101, FY17-102, FY17-103, FY17-104, FY17-174, FY17-184) seek records relating to the various Executive Orders titled "Protecting the Nation from Foreign Terrorist Entry into the United States" and several more expedited requests (FY19-206, FY19-209, FY19-211, FY19-212, FY19-214, FY20-002, FY20-003, FY20-004) seek records related to the government's hold and then release of military assistance funds to Ukraine in 2019, and/or the related whistleblower complaint and response to Congress.

15.     The average processing time for complex requests closed by OLC in FY2017 was approximately 155 business days, or nearly eight months, and the average processing time for

complex requests closed in FY2018 was approximately 207 business days, or nearly 10.5 months. The average processing time for complex requests closed in FY2019 was approximately 300 business days, or nearly 15 months.

## OLC'S FOIA LITIGATION DOCKET

16.     In addition to a substantial FOIA-request processing workload, OLC has increasingly become the subject of FOIA litigation, as requesters turn to the courts more often and more quickly than in prior years.

17.     Including this case, there are more than 40 active lawsuits seeking OLC records in which OLC is currently a named defendant or one of the relevant DOJ components in a suit in which the Justice Department is a named defendant. Of these cases, at least 30 were—like this one—filed in the past three calendar years and seek responses to requests that were submitted in the same calendar year. These attempts to bypass the ordinary FOIA processing queue by seeking court-ordered production deadlines far in advance of the ordinary course do significant damage to OLC's ability to complete its FOIA processing in a fair and orderly manner. Every time OLC must reallocate its sparse FOIA resources to defending these cases or attempting to meet a court-ordered production deadline, the result is further delay suffered by all other requesters.

18.     OLC is currently subject to the following court-ordered production deadlines:

- *Blumenthal, et al. v NARA et al.*, D.D.C. No. 18-cv-2143 – monthly processing
- *Leopold v Dep't of Justice*, D.D.C. No. 16-cv-001 – quarterly processing
- *Cora Currier v. DHS, et al.*, N.D. Cal. No. 17-cv-01799 – monthly processing
- *James Madison Project v. Dep't of Justice*, D.D.C. No. 17-cv-390 – monthly processing
- *Martinez v. Dep't of Justice*, D.D.C. No. 19-cv-3528 – monthly processing
- *Leopold, et al. v. Dep't of Justice*, D.D.C. No. 19-cv-2796 – final processing due March 13, 2020

- *Leopold, et al. v. Dep't of Justice, et al.*, D.D.C. No. 19-cv-1279 – final
  processing due March 31, 2020

## OLC'S PROCESSING OF PLAINTIFFS' FOIA REQUEST

19.     Although Plaintiff's FOIA request was submitted less than two months ago and is
well behind many other requests in priority, OLC has been working diligently to respond to
Plaintiff's request as soon as practicable.

20.     A member of OLC's FOIA staff has already begun the process of identifying
custodians and determining whether responsive records are likely to exist.

21.     Plaintiff seeks predecisional legal advice regarding a military action, and
communications with the National Security Council on the same subject.   In light of the nature
of this request, along with OLC's knowledge of the types of records that it generally maintains in
connection with the legal advice it provides regarding military actions, we expect that the
responsive records in this case are very likely to contain a high proportion of material that is
exempt from mandatory disclosure under the FOIA, particularly under Exemptions One and
Five, 5 U.S.C. §552(b)(1), (5).  This includes classified material and material that is subject to
the attorney-client, deliberative process, and presidential communication privileges.  These
records require close inspection to avoid inadvertently releasing exempt material.  Processing
these records will likely require extensive and burdensome consultations with other government
entities with equities in the documents (consultations that include classification determinations
and whether to make discretionary releases of exempt material).  It is not possible for OLC to
make release determinations on behalf of these other entities, and consultation is required under
these circumstances before any release determination may be made, pursuant to practice and
regulation. *See* 28 U.S.C. § 16.4(d).

22.     OLC has been processing, and continues to process, Plaintiffs' FOIA request as
quickly as practicable under the circumstances, given the nature of the request and OLC's
current FOIA burden.  For the reasons discussed above, it would be unduly burdensome,

impracticable, and infeasible to further expedite the processing of Plaintiff's FOIA request beyond the rate already employed by OLC.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 26, 2020, Washington, D.C.

_____
PAUL P. COLBORN